KENNETH O. POLLARD, APPELLEE AND CROSS-
APPELLANT, V. WRIGHT'S TREE SERVICE, INC.,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE,
NEBRASKA SECOND INJURY FUND, THIRD-PARTY
DEFENDANT, APPELLANT AND CROSS-APPELLEE.

322 N.W.2d 397

Filed July 16, 1982. No. 81-575.

Paul L. Douglas, Attorney General, and John R. Thompson, for appellant.

John R. Timmermier of Schmid, Ford, Mooney & Frederick, for appellee Wright's.

Michael P. Cavel of Stave, Cavel & Coffey, P.C., for appellee Pollard.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is a workmen's compensation case. At the initial hearing in the Workmen's Compensation Court the plaintiff was found entitled to benefits under the workmen's compensation law and received an award for temporary total disability to the date of the hearing and for so long as he remained totally disabled, and directed that if total disability ceases he was entitled to statutory amounts of compensation for any residual permanent partial disability. The employer impleaded the Second Injury Fund and made application for rehearing. On rehearing before a three-judge panel the court made an award to plaintiff against the employer for temporary total disability to January 22, 1981, and 7½ percent permanent partial disability to the body as a whole thereafter. The remaining portion of a total disability award was assessed against the Nebraska Second Injury Fund for the duration of plaintiff's total disability. The Second Injury Fund has appealed.

The plaintiff, who was 63 years old at the time of hearing, slipped and fell on January 17, 1979, while clearing brush in the course of his employment by Wright's Tree Service, Inc. He was hospitalized immediately and treated extensively thereafter. As a result of the fall he sustained an injury to his neck which, in and of itself, would have produced a 5 to 10 percent permanent partial disability to the body as a whole. The evidence showed, however, that the plaintiff had undergone three operations between 1972 and 1976 for cervical disc injuries. The first operation was for an injury in 1972, incurred while working for another employer, for which he received workmen's compensation. The two later surgical operations arose from automobile accidents. His

employer at the time of the accident involved here was aware of the previous injuries and the plaintiff's resulting partial disability when plaintiff was hired in January 1978. There was also evidence that the plaintiff had a history of episodes in which he stared into space and fell to the ground and was unable to move. The plaintiff's doctor testified that the fall of January 17, 1979, contributed in a material and substantial way to aggravate plaintiff's preexisting cervical spondylosis, and that the 1979 fall caused more disability than it would have to a patient who had not had the previous injuries.

At the initial hearing before the compensation court on October 6, 1980, the Nebraska Second Injury Fund was not a party. Following the entry of the total disability award on November 5, 1980, the employer made application for rehearing and impleaded the Nebraska Second Injury Fund. The Second Injury Fund filed a motion to strike the employer's amended answer and third-party petition on the ground that the compensation court had no jurisdiction over the Second Injury Fund unless it was impleaded prior to the initial hearing before the single judge. The Workmen's Compensation Court overruled the motion of the Second Injury Fund on March 25, 1981, on condition that the employer, Wright's Tree Service, Inc., pay court reporter and witness fees which might be reasonably required by the Second Injury Fund, and also pay temporary total disability benefits to the plaintiff as required by the initial award until such time as the rehearing took place. The employer accepted the conditions and the Second Injury Fund filed its answer. On April 21, 1981, the case was tried on rehearing.

On July 16, 1981, the Workmen's Compensation Court on rehearing found that the plaintiff had had three surgeries involving laminectomies and fusions resulting in a permanent disability rating of 30 to 35 percent, and that the plaintiff had a permanent par-

tial disability which would support a rating of 25 percent loss of earning power or more as a result of the surgeries, and that the defendant had knowledge of said permanent partial disability at the time the plaintiff was hired in 1978, as established by written records. The court further found that the plaintiff was totally disabled as the combined result of the injury to his back on January 17, 1979, superimposed on the previous permanent partial disability, and that since the injury of January 17, 1979, would of itself have caused only a 7½ percent permanent partial disability to the plaintiff's body as a whole, the defendant Nebraska Second Injury Fund was liable for the additional disability.

The court further found that as a result of the accident and injury of January 17, 1979, the plaintiff was unable to perform work for which he had previous training or experience and was entitled to vocational rehabilitation services. The court further found that as a result of the accident and injury of January 17, 1979, the plaintiff incurred hospital and medical expenses of more than $12,000, and was temporarily totally disabled to and including January 22, 1981, a period of 105⅐ weeks.

The court on rehearing therefore ordered that the plaintiff recover from the defendant Wright's Tree Service, Inc., the sum of $150.13 per week for 105⅐ weeks of temporary total disability, and thereafter and in addition thereto, the sum of $11.26 per week for 194⅚ weeks for 7½ percent permanent partial disability to plaintiff's body as a whole. The court gave credit for compensation and medical expenses paid.

The court also ordered that the plaintiff recover from the defendant Nebraska Second Injury Fund, commencing January 23, 1981, the sum of $138.87 per week for 194⅚ weeks, and thereafter and in addition thereto, the sum of $150.13 per week for the duration of plaintiff's total disability.

The Second Injury Fund first argues that there is insufficient competent evidence that plaintiff's injury arose out of his employment, and it is contended that his history of "drop attacks" enhances the degree of proof required to establish that the injury arose out of and in the course of the employment.

In testing the sufficiency of the evidence to support findings of fact made by the Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. The findings of fact made by the Workmen's Compensation Court after rehearing have the force and effect of a jury verdict and will not be set aside on appeal unless clearly wrong. *Rogers v. Hansen,* 211 Neb. 132, 317 N.W.2d 905 (1982). There is ample evidence in the record in the present case to support the compensation court's finding that the plaintiff suffered an injury arising out of and in the course of his employment.

The Second Injury Fund next contends that the compensation court did not acquire jurisdiction over the Second Injury Fund because the fund was not impleaded as a party prior to the initial hearing in the Workmen's Compensation Court. The fund relies upon Neb. Rev. Stat. § 48-128 (Reissue 1978), which provides in part: "In all cases where a claim is asserted by the state on behalf of the Second Injury Fund against an employer or employer's insurer under this section, or where a claim is made against said Second Injury Fund, the State of Nebraska shall be impleaded as a party plaintiff or defendant, as the case may require, and when so impleaded as a defendant, service of summons shall be had upon the Attorney General. It shall be the duty of the Attorney General to act as attorney for the state."

The foregoing requirements were all met in this case. There is no requirement in the statute that

the Nebraska Second Injury Fund be impleaded prior to the initial hearing in the Workmen's Compensation Court. Under current Nebraska statutes the Workmen's Compensation Court on rehearing proceeds to hear the cause de novo. See Neb. Rev. Stat. § 48-179 (Reissue 1978). There is no evidence in the record that the Second Injury Fund did not have time to investigate the case, prepare a defense, or prepare for trial at the rehearing, and the record shows that Wright's Tree Service, Inc., was required to pay the costs of taking any depositions reasonably required by the Second Injury Fund in preparing for trial, and the fund, in fact, participated in an additional deposition of plaintiff's doctor. There can be no question but that the compensation court had subject matter jurisdiction and also had jurisdiction of the parties. To hold that the Workmen's Compensation Court has no jurisdiction over the Second Injury Fund unless the fund is impleaded prior to the initial hearing in the Workmen's Compensation Court would write requirements into the statute which are not expressed, and restrict the liabilities of the Second Injury Fund without justification. In a workmen's compensation case the state and the Second Injury Fund may be impleaded as parties after the initial hearing in the Workmen's Compensation Court and prior to the de novo rehearing, in the absence of proof of prejudice.

Finally, the Second Injury Fund contends that because the Workmen's Compensation Court on rehearing did not specifically find that the plaintiff's total disability after January 22, 1981, was permanent, the Second Injury Fund is not liable until such a finding is made. Essentially, the fund argues that the requirement of vocational rehabilitation indicates that total disability at the present time might be reduced to some lesser percentage of partial permanent disability in the future as the result of such training, and that therefore present total dis-

ability is not a fixed, stable, or nonrecoverable disability and consequently is not permanent. It argues that unless there is a finding that total disability is permanent, it must be regarded as temporary and the fund cannot be held liable until that specific finding of fixed and permanent disability is made. We disagree.

The findings of the Workmen's Compensation Court on rehearing were that, as a result of the accident and injury of January 17, 1979, the plaintiff was temporarily totally disabled from the date of the accident to and including January 22, 1981, and thereafter sustained a 7½ percent permanent partial disability to the body as a whole which, combined with his preexisting disability, resulted in the plaintiff becoming totally disabled from and including January 23, 1981, to the date of rehearing, and that plaintiff would continue to be totally disabled for an indefinite future period of time.

Prior to 1971 § 48-128 limited recovery against the Second Injury Fund to cases of permanent total disability. The section was amended in 1971 to provide for recovery against the Second Injury Fund in cases of partial permanent disability as well as in cases of total permanent disability. Consequently, in the present case the Second Injury Fund is liable for the payment of all permanent disability in excess of the 7½ percent permanent partial disability charged to the employer. Whether the ultimate amount of permanent disability after rehabilitation is 60 percent, 80 percent, or total, the Second Injury Fund is liable for it.

The record reflects that the medical treatment for plaintiff's physical injuries has been completed and the employer has been assessed with that cost. The only further medical treatment contemplated is for the purpose of pain rehabilitation. Under such circumstances there should be little question but that the physical injuries currently present are perma-

nent rather than temporary. The plaintiff should not be denied compensation for what is currently total permanent disability simply because his employability and earning capacity might become enhanced by rehabilitation and his permanent disability possibly reduced at some time in the future. Neb. Rev. Stat. § 48-141 (Reissue 1978) provides that the amount of any compensation award payable periodically for 6 months or more may be modified at any time after 6 months from the date of the award, on application by either party, "on the ground of increase or decrease of incapacity due solely to the injury . . . ." See, also, *Camp v. Blount Bros. Corp.,* 195 Neb. 459, 238 N.W.2d 634 (1976). That case also held that in a modification proceeding in a workmen's compensation case, the whole question of the employee's physical condition can again be inquired into as of that time. The award against the Second Injury Fund in the present case was for permanent disability and was properly entered.

The Workmen's Compensation Court on rehearing determined that Wright's Tree Service, Inc., obtained a reduction in the amount of the award at the rehearing in the compensation court and therefore did not award an attorney fee to plaintiff's attorney. Neb. Rev. Stat. § 48-125 (Reissue 1978) provides in part: "In the event the employer files an application for a rehearing before the compensation court en banc from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court sitting en banc may allow the employee a reasonable attorney's fee to be taxed at costs against the employer for such rehearing, and the Supreme Court shall in like manner allow the employee a reasonable sum as attorney's fees for the proceedings in that court." It seems clear that "reduction in the amount of such award" ordinarily refers to the total

amount of the award to the employee and not to a reduction in the amount to be paid by a specific defendant who is liable to pay a portion of the award. In this case there was no reduction in the total amount of the award to the plaintiff. The only change which occurred was that the Second Injury Fund was held liable for a portion of the award rather than the tree service, which was liable alone on the initial award. The action of the compensation court in refusing to make an award of attorney fees to the plaintiff was in error.

In this court it is contended that no attorney fees can be allowed to plaintiff's attorney because only the Second Injury Fund appealed and the statute refers only to the "employer." The Second Injury Fund, within the meaning of § 48-125, is an employer, and if, on appeal to this court, it fails to obtain any reduction in the amount of the award of the Workmen's Compensation Court on rehearing, the employee is entitled to a reasonable sum as attorney fees in this court, to be assessed against the Second Injury Fund.

The judgment and award of the Workmen's Compensation Court on rehearing was correct and is affirmed. The cause is remanded to the Workmen's Compensation Court with directions to award the plaintiff a reasonable sum as attorney fees for the rehearing in that court. Plaintiff is allowed a fee of $1,000 for the services of his attorney in this court.

AFFIRMED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., not participating.