767 N.W.2d 502 (2009)
278 Neb. 41
Sharon H. ALLEN, appellant,
v.
IMMANUEL MEDICAL CENTER, appellee.
No. S-08-996.
Supreme Court of Nebraska.
July 2, 2009.
*503 Jerold V. Fennell, Elm Grove, WI and Michael J. Dyer, of Dyer Law, P.C., L.L.O., Omaha, for appellant.
Patrick R. Guinan, of Erickson Sederstrom, P.C., Omaha, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
STEPHAN, J.
The issue presented by this appeal is whether an award of the Workers' Compensation Court providing for periodic disability payments which is filed in a district court pursuant to Neb.Rev.Stat. § 48-188 (Cum. Supp. 2008) may become dormant. We conclude that it may and that the date on which the award becomes dormant is computed from the date it is filed in district court.

BACKGROUND
Sharon H. Allen injured her back in 1985 during the course and scope of her employment with Immanuel Medical Center (IMC). The Nebraska Workers' Compensation Court entered an award in Allen's favor, and it was modified on rehearing on November 5, 1987. The award on rehearing provided in relevant part that Allen would recover indemnity benefits of $200 per week for temporary total disability from July 15, 1985, to October 1, 1987, and "thereafter and in addition thereto the sum of $200.00 per week for so long in the future" as she remained totally disabled. The award further provided that "[i]f [Allen's] total disability ceases, she shall be entitled to the statutory amounts of compensation for any residual permanent partial disability...."
On December 10, 1987, Allen filed a certified copy of the compensation award on rehearing with the clerk of the district court for Douglas County. On June 26, 2008, Allen refiled the award in the district court and subsequently commenced garnishment proceedings against a bank, claiming that the bank held funds belonging to IMC and that IMC owed her $203,000 on the workers' compensation judgment.
IMC contested the garnishment by filing a motion to dismiss. In its motion, IMC raised nine defenses: (1) The judgment was dormant and could not be revived; (2) Allen's claim was barred by estoppel, laches, acquiescence, inexcusable neglect, and unclean hands; (3) Allen's claim was barred by waiver and estoppel; (4) Allen's claim was barred by accord and satisfaction; (5) the compensation award was a conditional judgment and thus wholly void; (6) IMC had complied with all the terms of the compensation award; (7) Allen's claim was barred by the statute of limitations; (8) Allen's claim was barred by res judicata and collateral estoppel; and (9) Allen's claim violated IMC's due process rights.
An evidentiary hearing was held on the motion. The record establishes that IMC *504 paid Allen disability benefits pursuant to the award, with the final payment being made on April 25, 1991. On May 24, 1988, Allen was given a permanent disability rating by her physician. She returned to full-time employment in February 1989 and continued to work full time until she retired in December 2006. It is undisputed that IMC has never filed an application in the Workers' Compensation Court to modify the terms of the original compensation award.[1] Allen made no attempt to execute on the award until commencement of the garnishment proceedings in July 2008.
The district court dismissed the garnishment action, reasoning that the award became dormant pursuant to Neb.Rev.Stat. § 25-1515 (Reissue 2008) in April 1996, 5 years after the date Allen last received a benefit payment, and that because 10 years had passed, it could no longer be revived.[2] The order did not address any of the other defenses asserted in the motion to dismiss.
Allen perfected this timely appeal, and we granted her petition to bypass the Court of Appeals.

ASSIGNMENT OF ERROR
Allen assigns, restated and consolidated, that the district court erred as a matter of law when it held that the compensation award became dormant pursuant to § 25-1515.

STANDARD OF REVIEW
Statutory interpretation is a question of law.[3] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusions reached by the trial court.[4]

ANALYSIS
The issue presented in this case involves the interplay between certain provisions of the Nebraska Workers' Compensation Act and statutory provisions pertaining to the enforcement of district court judgments. Although the case spans a time period of more than 20 years, the relevant statutory provisions have remained the same or substantially similar. Accordingly, we will refer to the current versions of the applicable statutes.
Our starting point is § 48-188, the provision in the Nebraska Workers' Compensation Act which permits a party to file and enforce a compensation award in the district court. Section 48-188 provides in relevant part:
Any order, award, or judgment by the Nebraska Workers' Compensation Court... may, as soon as the same becomes conclusive upon the parties at interest, be filed with the district court .... Upon filing, such order, award, or judgment shall have the same force and effect as a judgment of such district court... and all proceedings in relation thereto shall thereafter be the same as though the order, award, or judgment had been rendered in a suit duly heard and determined by such district court....
*505 Judgments of a district court may be enforced through the procedures set forth in chapter 25, article 15, of the Nebraska Revised Statutes. Section 25-1515 provides:
If execution is not sued out within five years after the date of entry of any judgment that now is or may hereafter be rendered in any court of record in this state, or if five years have intervened between the date of the last execution issued on such judgment and the time of suing out another writ of execution thereon, such judgment, and all taxable costs in the action in which such judgment was obtained, shall become dormant and shall cease to operate as a lien on the estate of the judgment debtor.
A dormant judgment may be revived, but only if the action to revive is "commenced within ten years after such judgment became dormant."[5]
Allen argues that a periodically payable workers' compensation award can never become dormant. Her argument rests primarily on § 48-141 and Neb.Rev.Stat. § 48-161 (Reissue 2004), two provisions of the Nebraska Workers' Compensation Act. Essentially, she argues that § 48-161 vests the Workers' Compensation Court with exclusive jurisdiction over any compensation claim and that under § 48-141, a compensation award payable periodically continues indefinitely unless modified by the Workers' Compensation Court. She argues that because § 25-1515 is not a listed exclusion in § 48-161 from the exclusive jurisdiction of the compensation court, the Legislature has made it clear that compensation judgments payable periodically are to continue indefinitely and are not subject to the dormancy requirements of § 25-1515.
Allen's argument relies on a misinterpretation of § 48-161 and fails to consider the effect of § 48-188. The first sentence of § 48-161 confers exclusive jurisdiction on the Workers' Compensation Court by providing: "All disputed claims for workers' compensation shall be submitted to the Nebraska Workers' Compensation Court for a finding, award, order, or judgment." Here, the compensation court exercised its exclusive jurisdiction to determine Allen's entitlement to benefits when it issued the 1987 award on rehearing. The action presently before us, however, is a proceeding to enforce that compensation award, and thus, it would fall within the second sentence of § 48-161; that sentence gives the compensation court jurisdiction "to decide any issue ancillary to the resolution of an employee's right to workers' compensation benefits," with certain exceptions not applicable here.
Contrary to Allen's argument, the Workers' Compensation Court's jurisdiction to decide ancillary issues is not exclusive. We held in Schweitzer v. American Nat. Red Cross[6] that the jurisdiction of the compensation court over issues ancillary to a workers' compensation claim is not exclusive and thus does not prevent a district court from exercising its jurisdiction over such matters. Allen's argument that § 48-161 fails to list § 25-1515 as an "exclusion" to the exclusive jurisdiction of § 48-161 is thus without merit. In addition, § 48-188 clearly provides that a compensation court award can be filed in the district court and that when it is, it has "the same force and effect as a judgment of such district court" and "all proceedings in relation thereto" shall be *506 the same as if it were a district court judgment. When the compensation statutes are read as a whole, it is clear that even though § 48-141 gives the compensation court indefinite jurisdiction to modify a periodically payable compensation award, if such an award is filed in district court pursuant to § 48-188, it is subject to all statutes that would affect its enforcement as a district court judgment, including § 25-1515. We thus conclude that the dormancy provisions of § 25-1515 apply to an award of the Workers' Compensation Court which is filed in a district court pursuant to § 48-188.
The next step in our analysis is to determine the commencement date of the 5-year period designated in § 25-1515. The district court held that this period began to run in April 1991, when the last payment was made to Allen pursuant to the award. We find no statutory basis for calculating the dormancy period from the date of the last payment, and the parties appear to agree that the district court was incorrect. IMC argues that the 5-year period began to run on November 5, 1987, when the award was entered by the compensation court. Allen argues that if the district court filing subjects the award to dormancy, the 5-year period should run from the date each separate periodic payment is due. Alternatively, she argues that only the amount of periodic payments due on the date of filing should be affected.
IMC's argument that computation of the dormancy period should begin on the date the award was entered by the compensation court is based in part upon our opinion in Koterzina v. Copple Chevrolet.[7] In that case, we held that prejudgment interest on a workers' compensation award filed in district court is payable from the date that the award was entered by the compensation court. The majority reasoned that § 48-188 has a "nunc pro tunc" effect requiring the award to be treated as if it had been entered by the district court on the date it was entered by the compensation court. The dissent interpreted the statute differently, disputing the nunc pro tunc effect relied upon by the majority. The dissent concluded that "[i]t is only upon filing of the workers' compensation award in the district court that interest commences."[8]
The plain language of § 48-188 gives a workers' compensation award the legal effect of a district court judgment "[u]pon filing" in the district court. Until that point, the award is governed solely by the Nebraska Workers' Compensation Act, which contains no provisions for execution or dormancy. It is only "[u]pon filing" of the award in district court that "all proceedings in relation thereto shall thereafter be the same" as though the award had been originally entered by the district court.[9] We read § 48-188 to subject a compensation award to the provisions of the execution and dormancy statutes only after it is filed in the district court. We therefore disapprove Koterzina and hold that the date on which a workers' compensation award is filed in a district court pursuant to § 48-188 is the date of judgment for purposes of computing when the judgment becomes dormant under § 25-1515. We note that this holding is consistent with the rule that because a foreign judgment becomes the functional equivalent of a Nebraska judgment on the date it *507 is registered in Nebraska pursuant to the Uniform Enforcement of Foreign Judgments Act, the dormancy period runs from the date of registration.[10]
We are not persuaded by Allen's argument that if the filing of an award in the district court subjects the award to dormancy, then the dormancy period should run from the date each payment is due. The argument is based upon Kansas and Georgia cases which have adopted such a rule in jurisdictions where, unlike Nebraska, periodic awards in family law cases are subject to dormancy statutes in the same manner as other judgments.[11] The Georgia Court of Appeals has extended this reasoning to periodic obligations under workers' compensation awards.[12] But we find no language in either § 48-188 or the Nebraska execution statutes which would permit us to fashion such a rule. Section 48-188 refers to the filing of a single judgment or award which, upon filing in the district court, "shall have the same force and effect as a judgment" of the district court. (Emphasis supplied.) Section 25-1515 begins the dormancy clock on "the date of entry of any judgment." This statutory language does not permit the judicial crafting of a rule which would treat a single workers' compensation award filed in district court as multiple judgments which become dormant on different dates. For similar reasons, we reject Allen's argument that only the amount of periodic payments due at the time of filing would be affected by § 25-1515.
For these reasons, we conclude that under § 25-1515, Allen's award became dormant in December 1992, 5 years after it was first filed in the district court in December 1987. Because the judgment was not revived within 10 years after it became dormant, it could not thereafter be revived[13] and the refiling of the award in 2008 was a nullity. Although our reasoning differs somewhat from that of the district court, we agree that the judgment had become dormant prior to the commencement of the garnishment proceedings, and those proceedings were therefore properly dismissed.

CONCLUSION
For the reasons discussed, we affirm the judgment of the district court.
AFFIRMED.
WRIGHT, J., participating on briefs.
NOTES
[1] See Neb.Rev.Stat. § 48-141 (Reissue 2004).
[2] See Neb.Rev.Stat. § 25-1420 (Reissue 2008).
[3] In re Estate of Chrisp, 276 Neb. 966, 759 N.W.2d 87 (2009); In re Interest of Devin W. et al., 270 Neb. 640, 707 N.W.2d 758 (2005).
[4] Gavin v. Rogers Tech. Servs., 276 Neb. 437, 755 N.W.2d 47 (2008); New Tek Mfg. v. Beehner, 275 Neb. 951, 751 N.W.2d 135 (2008).
[5] § 25-1420.
[6] Schweitzer v. American Nat. Red Cross, 256 Neb. 350, 591 N.W.2d 524 (1999).
[7] Koterzina v. Copple Chevrolet, 249 Neb. 158, 542 N.W.2d 696 (1996).
[8] Id. at 168, 542 N.W.2d at 703 (Wright, J., dissenting; Connolly, J., joins).
[9] § 48-188.
[10] St. Joseph Dev. Corp. v. Sequenzia, 7 Neb. App. 759, 585 N.W.2d 511 (1998), overruled on other grounds, Breeden v. Nebraska Methodist Hosp., 257 Neb. 371, 598 N.W.2d 441 (1999).
[11] See, Bryant v. Bryant, 232 Ga. 160, 205 S.E.2d 223 (1974); Wichita Fed. Sav. & Loan Ass'n v. North Rock Rd. Ltd. Partnership, 13 Kan.App.2d 678, 779 P.2d 442 (1989). But see Miller v. Miller, 153 Neb. 890, 46 N.W.2d 618 (1951).
[12] See Taylor v. Peachbelt Properties, Inc., 293 Ga.App. 335, 667 S.E.2d 117 (2008).
[13] See § 25-1420.