ANGELA PROCTOR, APPELLANT, V. MINNESOTA MUTUAL FIRE &
CASUALTY, APPELLEE.

534 N.W.2d 326

Filed June 30, 1995.   No. S-93-986.

Avis R. Andrews for appellant.

Thomas A. Grennan and Francie C. Riedmann, of Gross & Welch, P.C., for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WRIGHT, J.

The plaintiff, Angela Proctor, was injured in a motor vehicle accident. After the driver's insurance company paid Proctor $40,000, she brought suit to collect $25,000 from Minnesota Mutual Fire & Casualty (Minnesota Mutual), which insured Proctor's father. She also sought to have the Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 60–571 to 60–582 (Reissue 1988), declared unconstitutional. Minnesota Mutual demurred to Proctor's second amended complaint, and the district court granted the demurrer, dismissing the case. Proctor appeals, challenging the constitutionality of the act and the court's granting of a demurrer and dismissal. We removed the appeal to this court under our authority to regulate the caseloads of the appellate courts in this state.

## SCOPE OF REVIEW

In appellate review of a ruling on a general demurrer, this court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *S.I. v. Cutler*, 246 Neb. 739, 523 N.W.2d 242 (1994); *Erichsen v. No–Frills Supermarkets*, 246 Neb. 238, 518 N.W.2d 116 (1994). A court cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994); *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994); *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994). In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, the demurrer is to be overruled. *S.I. v. Cutler, supra*; *Horton v. Ford Life Ins. Co.*, 246 Neb. 171, 518 N.W.2d 88

(1994); *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994).

The constitutionality of a statute or ordinance is a question of law; accordingly, the Supreme Court is obligated to reach a conclusion independent of the decision reached by the trial court. *Boll v. Department of Revenue*, 247 Neb. 473, 528 N.W.2d 300 (1995); *State v. Popco, Inc.*, 247 Neb. 440, 528 N.W.2d 281 (1995); *Wagoner v. Central Platte Nat. Resources Dist.*, 247 Neb. 233, 526 N.W.2d 422 (1995).

"In any proceeding . . . if the statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General of the state shall also be served with a copy of the proceeding and be entitled to be heard." Neb. Rev. Stat. § 25-21,159 (Reissue 1989). If this condition is not met, the issue of constitutionality is not properly before the trial court.

On appeal to the Supreme Court, a party presenting a case involving the federal or state constitutionality of a statute must serve a copy of the brief assigning unconstitutionality on the Attorney General and file proof of service with the Clerk of the Supreme Court. If the party fails to observe these requirements, the Supreme Court will not consider the constitutionality of the statute under attack. *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990). See, also, *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994).

## FACTS

We rely on Proctor's second amended complaint, accepting as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom.

Minnesota Mutual provided underinsured motorist coverage to Proctor through her father's policy, No. 449523. On July 18, 1989, Proctor was riding in a Jeep operated by Kevin Novotny. Novotny negligently operated the Jeep, causing an accident in which Proctor was seriously injured. Novotny had an insurance policy which provided a limit of $25,000 of coverage to Proctor; however, Novotny's insurance company paid Proctor $40,000. The record does not disclose why $40,000 was paid to Proctor. Proctor's damages exceeded that amount.

Proctor's family insurance policy provided $25,000 in coverage for underinsured motorist insurance. The policy defined an underinsured motor vehicle as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid under that bond or policy to the 'insured' is less than the limit of liability for this coverage." The policy also provided that the coverage only applied to the owner or operator of such an underinsured motor vehicle. Minnesota Mutual denied coverage to Proctor.

Proctor brought suit in the district court for Dodge County on April 15, 1993. Minnesota Mutual filed a motion to make more definite, after which Proctor filed an amended petition. Minnesota Mutual successfully demurred to the amended petition.

On September 17, 1993, Proctor filed a second amended petition and a motion to determine necessary parties. In the second amended petition, she challenged the constitutionality of the underinsured motorist act:

> To the extent that the [act] may be interpreted to deny Plaintiff relief in the circumstances herein, the same is unconstitutional and that it unfairly legislates against the citizens of the State of Nebraska, in contravention of the equal protection rights and due process rights guaranteed to said citizens, including Defendant, by the United States Constitution and the Constitution of the State of Nebraska.

At the hearing on the motion, Proctor requested that the court decide whether the State of Nebraska was a necessary party to the dispute. The district court ruled that the state was not a necessary party, but added, "You may want to give the attorney general notice of your pleading." Nevertheless, there is no record within the bill of exceptions or transcript that Proctor served the Attorney General with a copy of the proceeding in the district court. There is no record that Proctor served a copy of the brief assigning unconstitutionality on the Attorney General and filed proof of service with the Clerk of the Supreme Court.

On October 8, 1993, the district court issued an order granting Minnesota Mutual's demurrer and dismissing the case

with prejudice. Proctor timely filed her notice of appeal on November 3.

## ASSIGNMENTS OF ERROR

Proctor asserts that the district court erred (1) in finding that the second amended petition failed to state a cause of action, (2) in sustaining Minnesota Mutual's demurrer, (3) in failing to consider evidence on the issues raised in the second amended petition and in failing to make a factual interpretation thereof, (4) in failing to allow evidence on the constitutional issues raised and in failing to make a ruling thereon, (5) in entering a decision which is contrary to law, and (6) in dismissing the second amended petition with prejudice.

## ANALYSIS

Proctor's argument, concisely stated, is that the district court's decision is unfair because Proctor was not compensated fully for her injury and further that the act is unconstitutional to the extent that it does not allow her to be compensated for her injuries. We first dispose of the constitutional arguments.

### CONSTITUTIONALITY

Pursuant to § 25–21,159, whenever litigants challenge the constitutionality of a statute, ordinance, or franchise, they must serve the Attorney General of the state with a copy of the proceeding, and the Attorney General shall be entitled to be heard in the district court. There is no evidence of such a service on the Attorney General by Proctor at the district court level. Although the district court suggested that Proctor send a copy of the proceeding to the Attorney General, there is no evidence in the record that Proctor carried through. The issue of the act's constitutionality was not properly raised in the district court and will not be considered on appeal.

Furthermore, there is no evidence that Proctor informed the Attorney General of this appeal. If the Attorney General is not already a party to an action where the constitutionality of the statute is in issue, a copy of the brief assigning unconstitutionality must be served on the Attorney General within 5 days of the filing of the brief with the Supreme Court

Clerk; proof of such service shall be filed with the Supreme Court Clerk. Neb. Ct. R. of Prac. 9E (rev. 1992). If the party fails to observe these requirements, the Supreme Court will not consider the constitutionality of the statute under attack. *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 463 N.W.2d 312 (1990). See, also, *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). We therefore do not consider the constitutional arguments made by Proctor.

STATUTORY INTERPRETATION

We have not decided a case involving underinsured motorist insurance since the act became effective. Prior to the effective date of the act, the clear and unambiguous policy provisions were enforced according to their plain and ordinary meaning. See *Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 419 N.W.2d 677 (1988). The policy which covered Proctor was issued for the period of March 30 to September 30, 1989, and the injury occurred on July 18, 1989. The act set forth a minimum requirement for underinsured motorist coverage. It provided:

(1) The maximum liability of the insurer under the underinsured motorist coverage shall be the lesser of:

(a) The difference between the limit of underinsured motorist coverage and the amount paid to the insured by or for any person or organization which may be held legally liable for the bodily injury, sickness, disease, or death; or

(b) The amount of damages sustained but not recovered.

(2) In no event shall the liability of the insurer under such coverage be more than the limits of the underinsured motorist coverage provided.

§ 60-578.

An amendment to § 60-578 became operative July 1, 1991. See 1990 Neb. Laws, L.B. 1136. Proctor filed her petition in the district court for Dodge County on April 15, 1993. However, statutes covering substantive matters in effect at the time of the transaction govern, not later enacted statutes. *No Frills Supermarket v. Nebraska Liq. Control Comm.*, 246 Neb. 822, 523 N.W.2d 528 (1994). Furthermore, a legislative act operates only prospectively and not retrospectively unless the

legislative intent and purpose that it should operate retrospectively is clearly disclosed. *Id.*; *Young v. Dodge Cty. Bd. of Supervisors*, 242 Neb. 1, 493 N.W.2d 160 (1992). In this case, there is no evidence that the legislation was meant to operate retrospectively, and the present action is governed by the 1988 reissue of the act.

The general rules governing statutory construction and interpretation provide that in the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning; this court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Vervaecke v. State*, 247 Neb. 707, 529 N.W.2d 779 (1995); *In re Application of City of Grand Island*, 247 Neb. 446, 527 N.W.2d 864 (1995); *State ex rel. Wieland v. Beermann*, 246 Neb. 808, 523 N.W.2d 518 (1994). The statute clearly states that the insurer's liability can be "[t]he difference between the limit of underinsured motorist coverage and the amount paid to the insured by [an] organization which may be held legally liable for the bodily injury." § 60-578(1)(a). For example, a victim is covered by $25,000 of underinsured motorist insurance and is paid $20,000 by the tort-feasor. The difference between what was paid and the limit of the coverage is $5,000, the amount of which is paid through the underinsured motorist coverage. On the other hand, if the victim received $30,000, there would be no money owing because the amount received was more than the victim's underinsured motorist coverage.

In the case at bar, Proctor had already been paid $40,000 by the tort-feasor's insurance company. The limit of the underinsured motorist provision on Proctor's policy was $25,000. Proctor has received $15,000 more than the limit of her underinsured motorist insurance coverage. There is no obligation under the statute whereby Minnesota Mutual would owe money to Proctor.

### CONTRACTUAL OBLIGATION

We next examine Minnesota Mutual's policy to determine whether there was a contractual obligation to pay Proctor. Proctor's underinsured motorist coverage was couched in the following terms:

We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury:"
1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle."

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

The definition of "underinsured motor vehicle" in the policy is the basis of the limitation of the liability for underinsured motorist coverage. In the present case, Proctor's insurance contract defines an underinsured motor vehicle to exclude situations in which the payments received from a tort–feasor are equal to or greater than the limits of the coverage. Since Proctor had already been paid $40,000, the contract, as well as the statute, did not invoke any coverage based on the underinsured motorist coverage provisions of Proctor's policy.

The policy on its face does not violate the provisions of the act relating to underinsured motorist coverage; therefore, ordinary principles of interpretation apply. An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. *Katskee v. Blue Cross/Blue Shield*, 245 Neb. 808, 515 N.W.2d 645 (1994); *Dalton Buick v. Universal Underwriters Ins. Co.*, 245 Neb. 282, 512 N.W.2d 633 (1994); *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552 (1993).

Minnesota Mutual had no obligation to pay any amount to Proctor. The lack of obligation was apparent on the face of the statute and on the face of the pleadings. When a demurrer to a petition is sustained, a court must grant a plaintiff leave to amend the petition *unless it is clear that no reasonable possibility exists that repleading will correct the defective petition. Vanice v. Oehm*, 247 Neb. 298, 526 N.W.2d 648

(1995); *Dalition v. Langemeier*, 246 Neb. 993, 524 N.W.2d 336 (1994); *Earth Science Labs. v. Adkins & Wondra, P.C.*, 246 Neb. 798, 523 N.W.2d 254 (1994). Since the contract did not create a liability on the part of Minnesota Mutual, there was no cause of action, and the demurrer was properly sustained without leave to amend. Furthermore, the lack of notification to the Attorney General forecloses any considerations of constitutionality. Minnesota Mutual was entitled to the granting of the demurrer and the dismissal of the case. The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH and LANPHIER, JJ., concur.